UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRIS RICHARD BARRY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:12-cv-1583-JCH |
| ) | |
| TOM VILLMER, Warden, ) | |
| Farmington Correctional Center ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Missouri state prisoner Chris R. Barry's ("Barry") petition for writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254. The Petition has been fully briefed and is ready for disposition.

On December 21, 2011, Barry was found guilty, after a bench trial, of two counts of Child Molestation in the First Degree; one count of Attempted Child Molestation in the First Degree; and two counts of Assault in the Third Degree. (Petition, ECF No. 1, ¶ 11). Barry was sentenced to a total of five years in prison. *Id.* ¶ 12. The sentencing judge also ordered that Barry participate in a "Shock Incarceration" program designed specifically for sex offenders (the "Program"). *Id.* ¶ 13. The Program, if successfully completed, would give Barry a chance to be released on probation. *Id.* ¶ 12; Mo. Rev. Stat. § 559.115.3. At a hearing on June 5, 2012, the sentencing judge, based on a report called a "Sexual Offender Assessment," declined to release Barry on probation without granting him an additional hearing. *Id.* ¶ 18. Believing he was wrongly denied an additional hearing, Barry filed a Petition for Writ of Mandamus in the Missouri Court of Appeals, in which he sought an order placing him on probation. *Id.* ¶ 20. The

1

Court of Appeals denied the mandamus petition, and the Missouri Supreme Court denied a subsequent mandamus petition. *Id.* ¶¶ 21, 22.

## DISCUSSION

Most claims for habeas corpus relief under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are reviewed under a standard that is deferential to state court determinations. *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011). The relevant portions of § 2254 are as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The two most common theories for habeas corpus relief, and the only ones relevant here, are set forth in subsection (d)(1). Under the "contrary to" theory, a district court must determine whether "the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law." *Yang v. Roy*, 743 F.3d 622, 625-26 (8th Cir. 2014). Under the "unreasonable application" theory, a district court must determine whether the state court's application of correctly identified legal principles is objectively unreasonable. *Id.*

Barry's sole contention in this Petition is that in failing to grant him a hearing before denying his release on probation, the sentencing judge did not provide adequate process to protect his "constitutionally protected liberty interest in the expectancy of his release after completion of" the Program. (Barry Reply, ECF No. 8, at 2). The Court notes at the outset that

neither party has provided a state court opinion setting forth its reasons for rejecting Barry's due process argument, and the Court assumes none exists. All that has been provided is a transcript of a court proceeding in which the State of Missouri recommended to the sentencing court that Barry not be released on probation. Barry, through his attorney, presented to that court his argument that he was entitled to a hearing both under Mo. Rev. Stat. § 559.115.3 and under the Due Process Clause of the Fourteenth Amendment. The sentencing court addressed only Barry's statutory argument, refused to grant him a hearing, and denied probation. Thus, the Court must conduct its review of the sentencing court's determination in the absence of any state court opinion that explains its reasons for rejecting Barry's constitutional claim.

The deferential AEDPA standard applies only "with respect to any claim that was adjudicated on the merits in State court proceedings . . . ." 28 U.S.C. § 2254(d). In situations such as these, where the state court has addressed some but not all of the claims presented to it, there is a rebuttal presumption "'that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.'" *Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011)). As neither party has challenged that presumption, the deferential § 2254 standard applies. To apply this standard in the absence of a fully-reasoned state court opinion, the Court must determine what theories "could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the United States Supreme Court. *Richter¸* 131 S. Ct. at 786.

Under the Fourteenth Amendment, no state may "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. The first step in a due

3

process inquiry therefore is to locate a liberty or property interest, only the former of which is relevant here. "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

Barry does not contend that the Due Process Clause itself creates a liberty interest in probation release. He contends only that § 559.115.3 creates an expectancy of release, which amounts to a liberty interest. (Barry Reply at 4). In support of this proposition, Barry relies on *Board of Pardons v. Allen*, 482 U.S. 369 (1987). According to Barry, the *Allen* court found a liberty interest existed under

> a Montana statute that mandated prisoners 'shall' be released on parole unless certain restrictions apply, namely, that the prisoner 'can be released without detriment to the prisoner or to the community' and that the board believes the prisoner 'is able and willing to fulfill the obligations of a law-abiding citizen.' Construing the use of 'shall' as a type of 'mandatory language' that creates 'a presumption that parole release will be granted,' the [Supreme Court] held that a prisoner does have a constitutionally protected expectancy of release or parole.

*Id.* at 2 (citing *Allen*, 482 U.S. at 376-78) (internal citations omitted). Because the language of § 559.115.3 uses similar mandatory language, Barry contends he "had a constitutionally protected expectancy that upon completion of [the Program] he would be placed on probation."[1] *Id.* at 4.

Barry's contention is unavailing because it rests on an incomplete reading of *Allen*. Without question, the mandatory language used in the Montana statute was a significant factor in the *Allen* court's finding of a liberty interest.[2] But equally important was the fact that the

---

[1] The Court notes that Barry was incarcerated while he was participating in the Program, so his situation is analogous to cases involving parole determinations.
[2] The Supreme Court has departed from the mandatory-language standard at least in cases involving prison regulations. *Sandin v. Conner*, 515 U.S. 472, 483 (1995). It would be reasonable to conclude,

4

Montana statute did not leave the Montana Board of Pardons with unfettered discretion. *See Allen*, 482 U.S. at 375-76, 379-80; *Snodgrass v. Robinson*, 512 F.3d 999, 1003 (8th Cir. 2008) ("On this question the law is clear: no liberty interest . . . is created unless the state statute or regulation involved uses mandatory language *and imposes substantive limits on the discretion of state officials*." (alteration in original) (emphasis added) (internal quotation marks omitted)). The Montana statutory scheme imposed broad but specific standards that the Board of Pardons was required to analyze in making its determination whether to grant parole. *Allen*, 482 U.S. at 379-80. This type of limited discretion "is not incompatible with the existence of a liberty interest in parole release when release is *required* after the Board determines (in its broad discretion) that the necessary prerequisites exist." *Id.* at 376 (emphasis in original). This is different from discretion unfettered by any standards, which is a type of discretion that "does not create a liberty interest in parole release." *Id.* at 375.

The state court could reasonably conclude that the discretion granted both to the department of corrections and to sentencing courts in relation to probation release under § 559.115.3 is of the unfettered type that is incompatible with the existence of a liberty interest. Section 559.115.3 explains the procedure to be followed after a sentencing court decides to place a convict in a shock incarceration or treatment program like the one at issue here:

> When the court recommends and receives placement of an offender in a department of corrections one hundred twenty-day program, the offender shall be released on probation if the department of corrections determines that the offender has successfully completed the program except as follows. Upon successful completion of a program under this subsection, the board of probation and parole shall advise the sentencing court of an offender's probationary release date thirty days prior to release. The court shall follow the recommendation of the department unless the court determines that probation is not appropriate. If the court determines that probation is not appropriate, the court may order the execution of the offender's sentence

---

however, that the inquiry is still relevant in relation to statutory schemes like the one at issue here. *See Sandin,* 515 U.S. at 481-82; *Morgan v. Rabun*, 128 F.3d 694, 699 (8th Cir. 1997).

only after conducting a hearing on the matter within ninety to one hundred twenty days from the date the offender was delivered to the department of corrections. If the department determines the offender has not successfully completed a one hundred twenty-day program under this subsection, the offender shall be removed from the program and the court shall be advised of the removal.

Mo. Rev. Stat. § 559.115.3. Thus, the statute creates two levels of unfettered discretion. First, the department of corrections is given the authority to determine whether a program participant has "successfully completed" the program. No substantive standards are set forth to guide that determination. Second, even if the department of corrections does determine that a participant has successfully completed a program, the sentencing court has the discretion to deny probation. Again, there are no substantive standards in the statute to limit that discretion.

In short, it would be reasonable to conclude that § 559.115.3 vests the type of discretion in decision-makers that *Allen* affirms is incompatible with the existence of a liberty interest. Therefore, it also would be reasonable to conclude that Barry had no liberty interest in probation release under § 559.115.3 that would entitle him to due process protection. Without such a liberty interest, Barry's claim that he is entitled to relief under § 2254 because he was denied due process must fail.

Accordingly,

**IT IS HEREBY ORDERED** that Barry's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**, and his claims are **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Barry cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).

Dated this 24th Day of October, 2014

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE